Steven A. Marenberg (101033)
(smarenberg@irell.com)
Josh B. Gordon (244818)
(josh.gordon@irell.com)
Ryan A. Ward (278699)
(rward@irell.com)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone:  (310) 277-1010
Facsimile:   (310) 203-7199

Attorneys for Plaintiff
DISNEY ENTERPRISES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC., a Delaware corporation,<br><br>                 Plaintiff,<br><br>       v.<br><br>PHASE 4 FILMS, INC., a Canadian corporation, PHASE 4 FILMS (USA) LLC, a Delaware limited liability company, and Does 1-10,<br><br>                 Defendants. | Case No. 13-CV-9401-RSWL<br><br>**PLAINTIFF DISNEY ENTERPRISES, INC.'S *EX PARTE* APPLICATION FOR ORDER TO EXPEDITE DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES** |

2943762

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................ 3

    I.    INTRODUCTION ............................................................................................ 3

    II.    FACTUAL BACKGROUND .......................................................................... 6

        A.    Disney's *FROZEN* and Distinctive *FROZEN* Trademarks ................. 6

        B.    *The Legend of Sarila* ........................................................................ 8

        C.    Defendants' *FROZEN LAND* and Infringing Mark ...................... 8

    III.    LEGAL STANDARD .................................................................................. 11

    IV.    ARGUMENT .............................................................................................. 11

    V.    CONCLUSION .......................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ................................................................... 5, 12

*Brookfield Commn's, Inc. v. West Coast Entertainment Corp.*,
  174 F.3d 1036, 1059 (9th Cir. 1999) .............................................................. 5

*Malibu Media LLC v. John Does 1 through 7*,
  2012 WL 2872842, *2 (E.D. Cal. July 11, 2012) ......................................... 11

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
  208 F.R.D. 273 (N.D. Cal. 2002) ..................................................... 11, 12, 13

*Warner Bros. Entertainment v. Global Asylum, Inc.*,
  No. 12-CV-09547-PSG-CW, 2012 WL 6951315, *11 (C.D. Cal.
  Dec. 10, 2012) .......................................................................................... 5, 12

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Plaintiff Disney Enterprises, Inc. ("DEI") hereby applies to this Court, *ex parte*, pursuant to Local Rule 7-19 and the rules of this Court, for an order expediting discovery with respect to narrow, targeted subjects highly relevant to the claims of trademark infringement and false advertising alleged by DEI against Defendants Phase 4 Films, Inc., Phase 4 Films (USA) LLC (collectively, "Phase 4"), and Does 1-10 (with Phase 4, "Defendants").

Good cause exists for granting this Application, the purpose of which is to obtain discovery to support a motion for a preliminary injunction DEI intends to file within the next thirty days. The requested discovery is limited to seven document requests, attached as Appendix A, and one Rule 30(b)(6) deposition notice covering five topics, attached as Appendix B.

The facts and the law supporting the issuance of an order granting the requested relief are set forth fully in the attached memorandum of points and authorities.

As set forth in the Declaration of Steven A. Marenberg filed in support of this Application ("Marenberg Decl."), the interests of justice require that this *Ex Parte* Application be heard without notice to Defendants. Marenberg Decl., ¶ 8. The name, address, and telephone number of counsel for Defendants is currently unknown. It will take up to thirty days for DEI to learn the identity of such counsel, at which time DEI would need to file its motion for preliminary injunctive relief without the discovery requested herein in order to prevent further harm to it on account of Defendants' ongoing conduct. Concurrently with the filing of this Application, DEI has endeavored to serve this Application and related papers on Defendants, including by mail, through an agent for service of process, and by electronic mail. Marenberg Decl., ¶ 9.

This Application is supported by the accompanying Memorandum of Points and Authorities, the Declarations of Steven A. Marenberg, Josh B. Gordon

1  ("Gordon Decl."), and Greg Coleman ("Coleman Decl."),และ accompanying
2  exhibits, the pleadings and papers on file in this action, other matters of which this
3  Court may take judicial notice, and any further evidence and argument that may be
4  presented at or before any hearing on this matter.

6  Dated:  December 23, 2013            Respectfully submitted,

                                        IRELL & MANELLA LLP

                                        By: /s/
                                        Steven A. Marenberg
                                        Attorneys for Plaintiff
                                        DISNEY ENTERPRISES, INC.

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.   INTRODUCTION**

3  In this *Ex Parte* Application, plaintiff Disney Enterprises, Inc. ("DEI") seeks an order permitting it to serve and take limited, targeted, and expedited discovery in support of a motion for a preliminary injunction that DEI intends to file in the next few weeks. For the reasons set forth below, good cause exists for granting the Application. The need for expedited discovery and provisional relief arises in the following procedural and factual context:

This is an action brought under the Lanham Act by DEI, whose affiliate Walt Disney Pictures released the animated motion picture, *FROZEN*, over the Thanksgiving holiday to acclaim and success. For months prior to its premiere, *FROZEN* was promoted for the theatrical market and on associated merchandise with these distinctive trade logos:





DEI has sued defendants Phase 4 Films, Inc. and Phase 4 Films (USA) LLC (collectively, "Phase 4"), the distributors of an animated motion picture originally named "*The Legend of Sarila*" that was released theatrically, both overseas and in the United States, using the following title logo:

- 3 -

2943762

THE LEGEND OF SARILA

*The Legend of Sarila* debuted in the United States in November 2013 without acclaim or box office success. Phase 4 thereafter changed the name of the film, in which "Sarila" refers to a mythical land of lushness, abundance, and beauty, to the misleading *"FROZEN LAND."* Moreover, Phase 4 changed the logo and artwork used to market the film to mimic the logos and artwork used by DEI and other Disney companies to promote *FROZEN*. DEI has alleged, with good cause, that Phase 4's activities are unlawful, including because they are likely to cause (indeed they already have caused) consumer confusion. That confusion is and will be particularly acute given the wide dissemination of DEI's *FROZEN* trademarks in the marketplace, including on consumer products such as toys and DVDs. Consumers are faced with trademarks that are nearly identical, as reflected in the photograph below:



As noted, in this Application DEI seeks leave to take limited, targeted, and expedited discovery to support a planned motion for a preliminary injunction that DEI intends to file within the next thirty days. The proposed expedited discovery

2943762  - 4 -

consists of seven document requests and a corporate deposition pursuant to FRCP 30(b)(6) on five topics. That discovery is attached hereto as Appendixes A and B, respectively, and seeks documents and a Rule 30(b)(6) deposition regarding (i) Defendants' knowledge of *FROZEN* and the *FROZEN* marks before their decision to rename *The Legend of Sarila "FROZEN LAND,"* and (ii) Defendants' intent to piggy-back off of DEI's significant marketing campaign and trademarks for *FROZEN* by changing the name of their film and by adopting as the artwork and logo for *FROZEN LAND* designs that are confusingly similar—indeed, virtually identical—to DEI's marks.

The discovery is highly probative of the matters that will be placed before the Court in DEI's request for provisional relief. In considering such an injunction, this Court will weigh the *Sleekcraft* factors that the Ninth Circuit uses to determine whether there exists a likelihood of confusion between two trademarks. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). One of the *Sleekcraft* factors, and one that will be highly relevant here, is the accused infringer's intent in selecting the mark. *E.g., Warner Bros. Entertainment v. Global Asylum, Inc.*, No. 12-CV-09547-PSG-CW, 2012 WL 6951315, *11 (C.D. Cal. Dec. 10, 2012) ("When a mark is adopted with 'the intent to deceive the public,' courts may presume that use of the mark will cause confusion.") (*citing Brookfield Commn's, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1059 (9th Cir. 1999)).

Intent to deceive the public weighs heavily in favor of the plaintiff in a *Sleekcraft* analysis. *Id.* at *14. DEI believes that a conclusion as to Phase 4's intent to deceive and trade off of DEI's efforts can be inferred from the circumstances—indeed it is the only reasonable inference. But Phase 4 may deny any such intent and attempt to posit some less culpable rationale for its conduct, and DEI ought to be able to counter that asserted rationale with the facts established through the requested discovery.

Furthermore, the proposed, expedited discovery and efficient preliminary injunction proceedings, supported by the relevant facts at the outset, are necessary to prevent the further harm to DEI and the public that will occur when *FROZEN* is released on home entertainment formats in late February and mid-March 2014. These long-planned release dates mean that there is not time to conduct discovery on a standard schedule before that further harm occurs.

## II.     FACTUAL BACKGROUND

### A.     Disney's *FROZEN* and Distinctive *FROZEN* Trademarks

*FROZEN* is the latest feature-length animated motion picture released by Disney, and is one of the most successful films of the year. *FROZEN* tells the story of Anna, a young princess whose sister, the Snow Queen, freezes her kingdom; Anna then journeys with her brave (but funny) companions to save her kingdom from an eternal winter. Since its nationwide release on November 27, 2013, Coleman Decl., ¶ 2, *FROZEN* has been exhibited in more than 3,700 theatres across the United States and is reported to have generated cumulative box office receipts of more than $170 million. *See* http://www.boxofficemojo.com. The picture has also received critical acclaim, including a 2014 Golden Globes nomination for best animated feature of 2013. *FROZEN* is scheduled to be released nationwide in digital download and video-on-demand formats on February 25, 2014 and in DVD and Blu-ray formats on March 18, 2014. Coleman Decl., ¶¶ 3-4.

The distribution of *FROZEN* has been accompanied by a wide-ranging marketing campaign. As part of that campaign, a distinctive logo for the "Frozen" trademark was created to promote the picture (the "*FROZEN* Trademark Logo"). The *FROZEN* trademark and the *FROZEN* Trademark Logo are as follows:



The *FROZEN* Trademark Logo is highly distinctive, including capital letters with jagged, uneven edges, dramatic flourishes on the letters, and an elongated R and Z that cradle the most prominent element—a stylized O that curves into itself and does not close entirely. The *FROZEN* trademark and the *FROZEN* Trademark Logo have been used and featured prominently on all marketing materials since June 2013.

In addition to the *FROZEN* Trademark Logo, Disney developed an additional trademark used in promoting the film and for the licensing program pursuant to which merchandise based on the characters, themes, and artwork of *FROZEN* was designed, manufactured, promoted, distributed, and sold. That additional trademark comprises the *FROZEN* Trademark Logo in white on top of a royal blue oval with a pattern of flourishes and a floral design surrounding the perimeter of the oval in a lighter shade of blue (the "*FROZEN* Blue Oval"). The flourishes and floral design is a form of rosemaling, a decorative folk art believed to have originated in Norway that Disney used to tie the trademark to the content of FROZEN, which takes place in a mythical kingdom surrounded by mountains and fjords inspired, in part, by Norway. The *FROZEN* Blue Oval has appeared on licensed merchandise and movie tie-ins since September 2013 and is as follows:



The *FROZEN* Trademark Logo and *FROZEN* Blue Oval were widely made available to Disney licensees in January 2013.

### B. *The Legend of Sarila*

The animated film *The Legend of Sarila* was produced in Canada by CarpeDiem Film & TV and 10th Ave Productions, Gordon Decl., Ex. 1 at 4, 7-8, and was directed and produced by Nancy Florence Savard. *Id*. at 8. The official press kit for the film describes it as "a ten year labour of love for Ms. Savard," *id*., after being introduced to the story by its writers, one of whom "had lived in the arctic for many years and fallen in love with Inuit culture." *Id*. As described by its original Canadian producers, *The Legend of Sarila* tells "the story of a voyage of initiation in which three young Inuit go in search of Sarila, a promised land, hoping to save their clan from famine." *Id*. at 2. "Sarila" is portrayed in the film as a mythical Garden-of-Eden of lushness, abundance and beauty.

*The Legend of Sarila* was released theatrically outside of the United States beginning in March 2013[1] using the following title logo:



### C. Defendants' *FROZEN LAND* and Infringing Mark

Phase 4 acquired the domestic distribution rights to *The Legend of Sarila* in or around June 2013[2] and released the film theatrically under that name in or around November 1, 2013.[3]

---

[1] *See* "The Legend of Sarila," IMDB, *available at* http://www.imdb.com/title/tt2296935/?ref_=fn_al_tt_1

[2] *See* "Phase 4 Takes U.S. on 'Sarila' (EXCLUSIVE)," VARIETY, *available at* http://variety.com/2013/film/news/phase-4-takes-u-s-on-sarila-exclusive-1200495142/.

However, *after* DEI had started promoting *FROZEN*, including through the use of the *FROZEN* Trademark Logo and *FROZEN* Blue Oval, and *after* releasing *The Legend of Sarila* theatrically using the film's original name and logo, Phase 4 renamed its film *FROZEN LAND* for its November 5, 2013 home video release in the United States[4]—a date three weeks before the nationwide theatrical release of *FROZEN* and months into DEI's marketing campaign.

Despite the infinite options available to it, Phase 4 created packaging and a logo for the new title *FROZEN LAND*:



The similarities between the foregoing logo and the *FROZEN* Trademark Logo are striking. As does the *FROZEN* Trademark Logo, the *FROZEN LAND* lettering also includes jagged, uneven edges, dramatic flourishes on the letters, and an elongated R and Z that cradle a stylized O that curves into itself and does not close entirely. In addition, the word "frozen" is significantly larger than the word "land." The DVD for *FROZEN LAND* and the spine of the DVD case each bear the stylized *FROZEN LAND* lettering as depicted above without the blue oval background. Gordon Decl., ¶ 3.

---

[3] *See* "The Legend of Sarila: Film Review," THE HOLLYWOOD REPORTER, *available at* http://www.hollywoodreporter.com/review/legend-sarila-film-review-652739; see also www.thelegendofsarila.com.

[4] *See* "Frozen Land," PHASE 4 FILMS, *available at* http://phase4films.com/detail.aspx?projectId=5d579154-42ea-e211-8257-d4ae527c3b65

1  Not satisfied with mimicking the *FROZEN* Trademark Logo, Defendants
2  mimicked the *FROZEN* Blue Oval by placing the stylized lettering in white on a
3  royal blue oval that, in addition to the title, includes decorative flourishes and floral
4  designs surrounding the perimeter in a lighter shade of blue—flourishes and floral
5  designs that are strikingly similar to the rosemaling used in the *FROZEN* Blue Oval.
6  The following depicts the nearly identical ovals:

 

13  Defendants' design choices obviously reflect their intent to piggy-back off of
14  DEI's trademarks and confuse consumers as to the origin of Defendants' film. For
15  example, Defendants adopted the title and marks employed by DEI for Disney's
16  story of a kingdom thrust into eternal winter, *i.e.*, "frozen," despite the fact that the
17  storyline of *FROZEN LAND*/*The Legend of Sarila* is about Inuits seeking to *escape*
18  an arctic that is *not frozen enough* to a warm and verdant land of plenty. In addition,
19  the use of rosemaling—which is evocative of Norwegian folk art—has no relevance
20  to a story of Inuits traveling through the arctic. In fact, *The Legend of Sarila* was
21  originally promoted using symbols and imagery more evocative of Inuit culture.
22  *See, e.g.* Gordon Decl., Ex. 1.

23  Indeed, there is only one possible inference that can be drawn from the
24  foregoing facts: Defendants intentionally changed the title of their animated film
25  from *The Legend of Sarila* to *FROZEN LAND* and intentionally changed the
26  artwork, logo, and packaging for *FROZEN LAND* to profit from DEI's labor and
27  goodwill in producing and promoting *FROZEN* in order to deceive the public.

Further evidence regarding that conduct and that intent is what DEI seeks through this Application.

## III. LEGAL STANDARD

A district court may permit expedited discovery upon a showing of good cause. *E.g., Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 275-76 (N.D. Cal. 2002); *see also Malibu Media LLC v. John Does 1 through 7*, 2012 WL 2872842, *2 (E.D. Cal. July 11, 2012) ("Courts in the Ninth Circuit apply a 'good cause' test in deciding whether to permit expedited discovery before the Rule 26(f) conference."). Good cause exists "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Semitool,* 208 F.R.D. at 276. The Court must make this determination "on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.* at 275. Courts have recognized that "good cause is frequently found in cases involving claims of infringement and unfair competition." *Id.* at 276.

## IV. ARGUMENT

Good cause exists for the expedited discovery requested by DEI because, on the entirety of the record to date and in light of all of the surrounding circumstances, "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to" Defendants. *Semitool,* 208 F.R.D. at 276. Specifically, considering the record to date, which shows blatant ongoing infringement of DEI's *FROZEN* marks by Defendants, the reasonable, targeted discovery requested will help prevent additional harm and move this case forward—and likely to a conclusion—quickly and efficiently.

First, DEI's requested discovery is directly relevant to the injunctive relief that DEI will soon seek. In evaluating DEI's request for injunctive relief, this Court will consider each of the eight *Sleekcraft* factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion;

(5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Sleekcraft*, 599 F.2d at 348-49.

DEI requests the documents and testimony necessary to present to this Court clear evidence relating to the application of the *Sleekcraft* factors. Good cause exists for this discovery because it seeks "core documents [and testimony] central to the underlying case." *Semitool*, 208 F.R.D. at 276 (granting expedited discovery of defendant's documents relating to plaintiff's infringement claims). In particular, DEI seeks targeted documents and testimony regarding the critical seventh *Sleekcraft* factor, defendant's intent in selecting the mark, which will weigh heavily in favor of DEI in a *Sleekcraft* analysis, thereby expediting necessary injunctive relief. *See Warner Bros. Entertainment*, 2012 WL 6951315, at *14.

Second, good cause exists for the requested discovery because DEI has alleged claims for trademark infringement and unfair competition, the scope of which can and should be determined early, particularly because of the imminent harm DEI will suffer when *FROZEN* is released in home entertainment formats on February 25 and March 18, 2014. Coleman Decl., ¶¶ 3-5. Here, expedited discovery will assist the Court in making that preliminary determination and will "substantially contribute to moving this case forward" without unnecessary delay. *See Semitool*, 208 F.R.D. at 276-77 (granting request for expedited discovery because plaintiff "made a clear showing that the narrow categories of documents and physical inspection of the device not otherwise accessible will substantially contribute to moving this case forward . . . .") The requested discovery will also serve judicial economy, as it will abrogate the need for DEI to produce supplemental declarations and piecemeal support for the preliminary injunction it will seek, thereby conserving party and Court resources and expediting the litigation. *See id.* at 277.

1       Third, expedited discovery will not unduly prejudice Phase 4. The discovery proposed by DEI in Appendixes A and B hereto is narrowly tailored to obtain the necessary information, which is not otherwise accessible, to support DEI's motion for injunctive relief. Specifically, DEI seeks targeted documents and testimony from Phase 4 regarding (i) Defendants' knowledge of *FROZEN* and the *FROZEN* marks before their decision to rename *The Legend of Sarila*, *"FROZEN LAND,"* and (ii) Defendants' intent to piggy-back off of DEI's significant marketing campaign and trademarks for *FROZEN* by changing the name of their film and by adopting designs that are virtually identical to DEI's marks as the artwork and logo for *FROZEN LAND*.

      These are limited subjects for which documents surely exist; a decision as significant as changing the name and the logo for a newly-acquired film is not done off-the-cuff and without documentation. Obtaining the requested discovery on an expedited basis thus should not be difficult or burdensome for Phase 4, which need only identify limited documents from seemingly few people involved in the relevant acts and produce a single corporate designee for deposition. Moreover, the expedited discovery will not prejudice Phase 4 because it will only require Phase 4 to produce documents and testimony earlier than under a standard schedule, not in addition to what might normally be expected. Indeed, DEI would undoubtedly receive the documents and testimony in the course of normal discovery in any event. *See Semitool*, 208 F.R.D. at 276 (granting expedited discovery where defendant was only required "to advance the propounding of discovery by approximately three weeks").

      Lastly, DEI has sought to give Phase 4 as much time as possible to return the requested discovery. The document production requests are returnable on January 9 and the corporate deposition is noticed for January 14 so as to give Phase 4 as much time as possible, yet still permit DEI to bring a preliminary injunction motion and have it heard before *FROZEN* is released in home entertainment markets.

## V. CONCLUSION

For the foregoing reasons, DEI respectfully requests that this Court order Defendants to produce for inspection by January 9, 2014, the documents requested on Appendix A hereto and, by January 14, 2014, a corporate designee pursuant to FRCP 30(b)(6) to testify on the topics set forth on Appendix B hereto. A proposed order has been filed concurrently herewith for the Court's convenience.

Dated:  December 23, 2013

Respectfully submitted,

IRELL & MANELLA LLP

By: _____
Steven A. Marenberg
Attorneys for Plaintiff
DISNEY ENTERPRISES, INC.